IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| NANCY BURBIC, | ) | Case No. 07-01680-BGC-7 |
| | ) | |
|     Debtor. | ) | |

| | | |
|---|---|---|
| JAMES G. HENDERSON, TRUSTEE | ) | |
| | ) | |
|     Plaintiff, | ) | A.P. No. 08-00003 |
| | ) | |
| vs. | ) | |
| | ) | |
| JIMMY D. RAY aka DALE RAY, fictitious | ) | |
| defendants, A, B, C, D, E, F, G, H, I, J, K | ) | |
| L, M, N, O, P, Q, R, and S, being those | ) | |
| defendants who either are in possession | ) | |
| of the property set out <u>infra</u> or claim an | ) | |
| interest in the property. | ) | |
| | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a Motion for Partial Summary Judgment (hereinafter, the "Motion") filed by James G. Henderson, Trustee in the above styled bankruptcy case (hereinafter, the "Trustee"), a Response of Defendant Jimmy D. Ray to Motion for Partial Summary Judgment (hereinafter, the "Response"), Addendum to the Response (hereinafter, the "Addendum") filed by Jimmy D. Ray (hereinafter, the "Defendant") and the Trustee's Response to Response of Defendant as Regards the Motion (hereinafter, the "Trustee's Response"). Appearing at the September 22, 2008 final hearing were William Dennis Schilling, attorney for the Trustee (hereinafter, "Mr. Schilling") and Steven C. R. Brown (hereinafter, "Mr. Brown"), attorney for the Defendant. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a) (1994) and the district

court's General Order Of Reference Dated July 16, 1984, As Amended July 17, 1984.[1] This is a core proceeding arising under Title 11 of the United States Code as defined in 28 U.S.C. § 157(b)(2)(A).[2] This Court has considered the pleadings, arguments of counsel, and the law and finds and concludes as follows.

## I. FINDINGS OF FACT[3]

On April 13, 2007, (hereinafter, the "Petition Date") an involuntary chapter 11 bankruptcy case was filed against the Debtor, and an order for relief was entered by consent. (Proceeding No. 15) The case was later converted to a chapter 7, and a trustee was appointed.[4] (Proceeding No. 120) On January 4, 2008, the Trustee commenced this adversary proceeding against the Defendant to recover certain real property of the estate located in Chilton County, Alabama (hereinafter, the "Property"), and filed the Motion on May 22, 2008.[5] In short, the Trustee contends that title to the Property never left the Debtor so that it became property of the estate upon the filing of the

---

[1] The General Order of Reference Dated July 16, 1984, As Amended July 17, 1984 issued by the United States District Court for the Northern District of Alabama provides:
> The general order of reference entered July 16, 1984 is hereby amended to add that there be hereby referred to the Bankruptcy Judges for this district all cases, and matters and proceedings in cases, under the Bankruptcy Act.

[2] 28 U.S.C. §157(b)(2)(A) provides:
> (b)(2)Core proceedings include, but are not limited to–
> (A) matters concerning the administration of the estate[.]

[3] Pursuant to Rule 201 of the Federal Rules of Evidence, the Court may take judicial notice of the contents of its own files. See ITT Rayonier, Inc. v. U.S., 651 F.2d 343 (5th Cir. Unit B July 1981); Florida v. Charley Toppino & Sons, Inc., 514 F.2d 700, 704 (5th Cir. 1975).

[4] Pursuant to 11 U.S.C. § 348(a), the conversion of the case from chapter 11 to chapter 7 does not alter the Petition Date in this case.

[5] The Debtor's main bankruptcy case was and is assigned to Judge Benjamin Cohen. However, on April 1, 2008, Judge Cohen recused himself from this adversary proceeding pursuant to 28 U.S.C. § 455, and assigned the adversary proceeding to this Court. (Proceeding No. 11)

bankruptcy. The Defendant, on the other hand, contends that the Debtor conveyed the Property to him in exchange for a mortgage and that he is the outright owner of the Property.

On April 27, 1985, the Debtor purchased the Property from Suzanne Renee Hartley and received fee simple title. (Proceeding No. 35, Exhibits A and B) On January 9, 1988, the Defendant allegedly purchased the Property from the Debtor. This alleged sale is evidenced by a document dated January 9, 1988 and signed by the Debtor and the Defendant, whereby the Defendant agreed to mortgage the Property for $20,000 and make payments according to the instructions contained therein (hereinafter, the "Agreement"). (Proceeding No. 40, Exhibit B) The Trustee disputes the validity of the Agreement as any sort of instrument of conveyance. (Proceeding No. 58) According to the Trustee's title commitment, title for the Property as of November 19, 2007, remained in the Debtor. (Proceeding No. 35, Ex. B) Admittedly, the Defendant never filed anything related to the Agreement or the Property in the Probate Court of Chilton County, Alabama. (Proceeding No. 4) In 2003, an attorney on behalf of the Defendant wrote a brief letter to the Debtor requesting a general warranty deed to the Property, or else they would "seek further legal redress to protect Mr. Ray's interest." (Proceeding No. 40, Ex. C) Despite this request, the Defendant does not possess a deed to the Property. (Proceeding No. 35 and Proceeding No. 40) Furthermore, the tax notices have remained in the Debtor's name since 1985, despite the Defendant's allegations that he paid "with certain exceptions, the annual property taxes" and also despite the fact the Debtor failed to list the Property on Schedule A. (Proceeding No. 40, ¶ 3 and Proceeding No. 57) From the Exhibit A attached to the Response, it appears to this Court that the Defendant or some entity of the Defendant paid the taxes for years 1999, 2000, 2001, 2002, 2003, 2004 and 2006, and the Debtor paid the taxes for year 2005. (Proceeding No. 40)

Since 1988, the Defendant has been in possession and maintained exclusive control of the

Property. (Proceeding No. 40) The Defendant has placed a mobile home on the Property and erected certain fixtures including fencing, catch pens and a rodeo arena in furtherance of his rodeo business (hereinafter, the "Fixtures"). (Proceeding No. 40) The Defendant refuses to surrender the Property and maintains that he has fulfilled his debt obligations under the Agreement. (Proceeding No. 40) He has presented at least one letter from an attorney for the Debtor's husband indicating that on April 12, 1995, he was current on his payment obligations. (Proceeding No. 40, Exhibit E) However, due to his deviation from the self-amortizing payment schedule, the Defendant admits to owing some accrued interest under the Agreement. (Proceeding No. 40) From the amortization schedules supplied to this Court, it appears there was at one point unpaid accrued interest in the amount of $4161.97. (Proceeding No. 40, Exhibit F) Regarding his payments to the Debtor, the Defendant claims to have checks and other proofs of payment, but none have been supplied to this Court or the Trustee. (Proceeding No. 40)

Finally, the Defendant offers to the Court as proof of title to the Property his divorce decree entered on August 2, 2000 (hereinafter the "Divorce Decree"). (Proceeding No. 40, Exhibit D) According to the Divorce Decree, title to the Property remained in the Defendant subject to his purchasing his wife's equity in the Property for $11,000.00 and assuming the outstanding mortgage indebtedness to Lester Burbic. No deed or other title documents have been supplied to this Court indicating the Defendant's wife's prior interest in the Property.

## II. CONCLUSIONS OF LAW

**A.     Summary Judgment**

In the Motion, the Trustee requests that this Court grant summary judgment in his favor with regards to Counts One and Two of the Complaint. In Count One, the Trustee requests the Court to find he has superior title to the Defendant as regards the Property. In Count Two, the Trustee

requests the Court to find he is entitled to possession of the property. Summary judgment is appropriate only if no genuine issue as to any material fact exists and if the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56.[6] The party moving for summary judgment has the burden of demonstrating that these conditions are met. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The court, in determining whether the movant has met his burden of proof, must consider the evidence and view it in the light most favorable to the non-moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970). When the movant satisfies his initial burden, the burden shifts to the non-moving party. Miranda v. B&B Cash Grocery Store Inc., 975 F.2d 1518 (11th Cir. 1992).

**B.      11 U.S.C. § 544(a)**

The Trustee brings the Motion pursuant to § 544(a) of the Bankruptcy Code.[7] The Trustee asks this Court to find that he is a bona fide purchaser with superior title pursuant to § 544(a)(3). Alternatively, the Trustee requests the Court to find at a minimum that he is a judgment creditor with a perfected lien against the Property to the extent of the debts in this case pursuant to § 544(a)(1). The Court will first determine if the Trustee is a bona fide purchaser (hereinafter, "BFP") for

---

[6] Made applicable to adversary proceedings by Rule 7056 of the Federal Rules of Bankruptcy Procedure.

[7] Specifically, the Trustee relies upon 11 U.S.C. § 544(a)(1) and (3), which provide:
>(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by–
>>(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
>>(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists [and has perfected such transfer].

purposes of § 544(a)(3).

Section 544(a)(3) provides a trustee with the rights of a perfected BFP "who might have purchased the property from [d]ebtor" as of the commencement of the bankruptcy case. Flatau v. Madonian (In re Sheetex, Inc.), Nos. 98-52263-JDW, 98-5079, 1999 WL 739628, at *6 (Bankr. M.D. Ga. September 21, 1999). The trustee is "clothed with whatever legal rights the bona fide purchaser would possess" under state law. Billings v. Cinnamon Ridge, Ltd.(In re Granada, Inc.), 92 B.R. 501, 504 (Bankr. D. Utah 1988); see also White v. Taylor (In re Taylor), 43 B.R. 524, 527-28 (Bankr. N.D. Ala. 1984). This "so-called strong arm power" enables a trustee to avoid any transfer of a debtor's real property that the BFP could also avoid. In re Granada, 92 B.R. at 503, 510 (holding that a trustee may avoid an unrecorded equitable interest in real property) ; see also In re Sheetex, 1999 WL 739628, at *6, *9 (holding that a trustee may avoid an unrecorded interest in condominium); Grant v. Grantham (In re Eiland), 260 B.R. 301, 304-305 (Bankr. M.D. Fla. 2000) (holding that a trustee may avoid an unrecorded, pre-petition transfer of and an unperfected equitable interest in real property); Kapila v. Dye (In re Schiavone), 209 B.R. 751, 754, 757 (Bankr. S. D. Fla. 1997) (holding that a trustee may avoid an unrecorded interest in real property).

When the Debtor's bankruptcy case converted to a Chapter 7, an order for relief was entered and the Trustee stepped into the shoes of a hypothetical BFP of the Property. In re Eiland, 260 B.R. at 304. The Trustee's status as a BFP must be examined under Alabama law. In re Taylor, 43 B.R. at 528. If the Trustee is found to be a BFP, then he may avoid the Defendant's interest in the Property.

**C.     Alabama Law**

    **1.     Bona Fide Purchaser and Notice**

Under Alabama law, a BFP is one who "'(1) purchases legal title, (2) in good faith, (3) for

adequate consideration, (4) without notice of any claim of interest in the property by any other party.'" Wallace v. Frontier Bank, N.A., et al., 903 So. 2d 792, 797 (Ala. 2004) (citations omitted). Notice "may be actual or constructive"; all that is required is that there be "knowledge of facts which would cause a reasonable person to make an inquiry which would reveal the interest of a third party." Id. Section 544(a) of the Bankruptcy Code protects a trustee from actual knowledge, but, under state law the trustee may still be charged with constructive knowledge. See In re Taylor at 528, n.3. "[A]n instrument outside a purchaser's chain of title does not give constructive notice." Wallace, 903 So. 2d at 797. However, the Alabama Supreme Court has held that possession of land may provide a purchaser with constructive notice of the possessor's unrecorded deed and title. In re Taylor, 43 B.R. at 529.

The Trustee, as the movant, bears the burden of proving he is a BFP. At the outset, the Trustee's examination of the Property's record title failed to constructively notify him of the Defendant's alleged interest in the Property. The Defendant admits that nothing regarding his interest in or use and possession of the Property was ever filed in the Probate Court of Chilton County, Alabama. The Trustee obtained a title commitment indicating record title belonged to the Debtor. Additionally, an examination of the tax records provided by the Defendant showed that although he paid the Property's taxes for a few years, the actual tax assessment and notices from 1985 to the Petition Date remained in the Debtor's name. From the title commitment and the tax assessment, this Court concludes that the Debtor possessed legal title to the Property. See Baldwin County Fed. Sav. Bank v. Cent. Bank of the S., 585 So. 2d 1279, 1282 (Ala. 1991) (name on tax assessment supports legal title).

Despite the record clearly indicating the Debtor's legal title, the Defendant's open and notorious possession imparts constructive knowledge to the Trustee regarding the Defendant's

equitable claims to the Property. In re Taylor, 43 B.R. at 528 (citing Gulf Oil v. Beck, 300 So. 2d 822 (Ala. 1974) and Alexander v. Fountain, 70 So. 669 (Ala. 1916)). Thus, under Alabama law, the Trustee, as a BFP, has a duty to inquire further into these claims. In response to the Trustee's questioning of his interest in the Property, the Defendant produced the Agreement, signed on January 9, 1988, by him and the Debtor. The Defendant would have this Court conclude that the Agreement coupled with continuous possession of the Property establish at a minimum his equitable title to the Property. The Defendant relies on several cases suggesting that one in possession of property under an unrecorded deed may hold title.[8] However, this case is distinguishable and the suggested case law is inapplicable, because although requested, the Defendant admits he never received a deed from the Debtor. Thus, it is not the failure to record a deed, but the fact that since neither the Defendant nor the Debtor produced a deed in the course of this litigation, this Court must conclude no deed ever existed transferring title to the Defendant.

### 2. The Agreement

In absence of a deed, the Defendant suggests this Court should interpret the Agreement as "effective to convey title to the property" based upon the intent of the parties. (Proceeding No. 57, ¶¶ 5-6) Under Alabama law, a conveyance of real property must be in writing, signed by the grantor, properly witnessed before a notary public and must express an intent by the grantor to convey the property. See Ala. Dep't. of Revenue v. Ritchey, 541 So. 2d 514, 515 (Ala. 1989) (citing ALA. CODE § 35-4-20 and §35-4-21 (1975)). The Defendant relies upon Lavender v. Ball for the

---

[8]Some cases cited include: Baldwin County Fed. Sav. Bank v. Cent. Bank of the S., 535 So. 2d 1279, 1281 (Ala. 1991) (where deed is unrecorded possession may put one on inquiry notice regarding "competing claims to the property"); Gulf Oil Corp. v. Beck, 300 So. 2d 822, 823 (Ala. 1974) (possession under an unrecorded deed may impart constructive notice of possessor's claims); Fowler v. Morrow, 15 So. 2d 629, 631 (Ala. 1943) (possession under a deficient unrecorded deed gave equitable title).

proposition that this Court can reform the Agreement and construe it as a deed. 100 So. 2d 331 (Ala. 1958). In Lavender, the grantor conveyed the property by an inartfully drawn bill of sale. Id. at 332. However, the bill of sale, unlike the Agreement before this Court, contained adequate words of conveyance and sufficiently described the property. Id. at 333. Although the bill of sale was not properly acknowledged so as to convey legal title, it evidenced an overall intent to sufficiently convey equitable title. Id.

In this case, the Agreement is missing more than a proper acknowledgment. It contains no language of conveyance by the Debtor as a grantor. Rather, it is written by the Defendant and appears to be an attempt to mortgage the Property for $20,000. The Defendant even calls it a "written purchase agreement" rather than a deed in the Response. (Proceeding No. 40, ¶ 6) Furthermore, the facts fail to indicate that the Debtor intended to outright convey the Property to the Defendant. All of the pertinent documents before the Court have remained in the Debtor's name. The Debtor appears to have taken no steps to transfer, convey or deed this Property to the Defendant. Similarly, the Defendant built or placed the Fixtures on the Property without taking any steps, other than making one written request in 2003, to procure and record a deed from the Debtor. The Defendant alleges he has paid the Property's taxes since 1988. However, he has only offered proof of such payment for years 1999 through 2004 and 2006. In 2005, the Debtor paid the property taxes, and it is this Court's view that this payment by the Debtor indicates she still possessed an interest in the Property.

Viewing the Agreement and all the facts contained herein in the light most favorable to the Defendant, as the non-moving party, the Court concludes the Agreement, even though it attempts to mortgage the Property, is at best a loan or a financial or lease-type arrangement. Despite the Defendant's claims to have paid-off the Agreement, he has provided no cancelled checks or other

proof of payment, other than an amortization schedule of payments and a letter from an attorney for Debtor's husband in 1995 indicating a current balance at that time under the Agreement. Since then, it appears from an amortization schedule supplied to the Court that the Defendant, as of August 6, 2004, accrued unpaid interest in the amount of $4161.97. (Proceeding No. 40, Ex. F)

    3.    **Adverse Possession**

Because there is no deed, the Trustee also addressed whether the Defendant could have title to the Property by either statutory adverse possession or adverse possession by prescription. Both theories fail to provide the Defendant title. For statutory adverse possession, the Defendant must have for the preceding ten years held record title and paid the property taxes. ALA. CODE § 6-5-200 (1975). He has done neither. For adverse possession by prescription, he must have continuously held the property for twenty years. W.J. Eason v. Samson Lodge No. 624, 117 So. 2d 138, 143-44 (Ala. 1969). No evidence was presented as to whether, as of the Petition Date, the Defendant had continuously possessed the Property for twenty years. Additionally, no evidence was presented that the Defendant's possession was adverse to the Debtor. The Trustee points out that even if he did satisfy these theories of adverse possession, the Defendant has admitted to owing some interest under the Agreement, and as a result, his title would be subordinate to that of the Trustee. See Gay v. Tompkins, 385 So. 2d 973, 983 (Ala. 1980).

    4.    **The Divorce Decree**

In a final attempt to prove title in response to the Trustee's inquiries, the Defendant offers the Divorce Decree. The Divorce Decree ordered the Defendant to purchase his ex-wife's interest in the Property. The Court declines to accept this document as evidence of the Defendant's title, and agrees with the Trustee's Response that third parties, such as the Debtor, are not subject to or affected by the terms of a divorce decree. See Campbell v. Campbell, 371 So. 2d 55, 59 (Ala. 1979).

The Debtor was not a party to the Divorce Decree, and no other evidence surrounding this document is before the Court.[9] The Court also notes that the case relied upon by the Defendant is quite distinguishable from this case. In Jones v. Marchman (In re Marchman), the divorce decree which conveyed the property was actually between the debtor and his ex-wife. 268 B.R. 859, 860 (Bankr. M.D. Ala. 2001). As previously mentioned, the Debtor in this case was in no way party or privy to the Defendant's Divorce Decree, and record title remained at all times in the Debtor's name.

**D.     Reconciling State Law and the Purposes of 11 U.S.C. § 544(a)(3)**

In view of all the foregoing law and facts, the Court concludes that under Alabama law, the Defendant does not have title, equitable or otherwise, in the Property, and as a result, the Trustee, pursuant to § 544(a)(3), is a perfected BFP. The Defendant has urged the Court to use its equitable powers under 11 U.S.C. § 105(a) to find the Property belongs to him, but the Court declines to do so. Although this result may seem harsh at first glance, this Court is obligated to enforce and uphold the provisions and the purposes of the Bankruptcy Code. The Bankruptcy Code clearly grants the Trustee as a BFP the power to avoid unperfected interests in the Property. In re Eiland, 260 B.R. at 305. The purpose of the trustee's strong-arm powers is to further and to protect the interest of creditors. See In re Granada, 92 B.R. at 509. Section 544(a)(3) enables anyone, and most importantly creditors, to rely on the record title before them. Id. at 510. In this case, no document transferring the Debtor's interest in the Property has been produced. Nothing in this case was recorded by either the Debtor or the Defendant; further, the Debtor did not even schedule the Property. This Court will not use its equitable powers to condone the parties' failure to prepare and

---

[9] The Divorce Decree is based upon an agreement between the Defendant and his ex-wife. The Defendant and his ex-wife apparently assumed they had some legal interest in the Property. However, no trial regarding the divorce was conducted, and thus no legal determination was made as to their alleged interest in the Property.

sign documents or to record documents (whether intentional, negligent or otherwise). As one bankruptcy court has held, to disregard record title may promote creditors being trumped by "secret liens and unrecorded equitable interests" in total disregard to a commercial economy that relies on the record. Id. The Court has not been presented any evidence that there was any intentional misconduct in this case to hide assets from creditors and the Trustee. However, this Court's ruling is in furtherance of allowing trustees and creditors to rely upon the record before them. Furthermore, another bankruptcy court has noted in a similar situation that equitable remedies "are generally not available with regard to the rights and powers of a bankruptcy trustee." See Logan v. Universal 1 Credit Union (In re Bozman), 365 B.R. 824, 827, n.2 (Bankr. S.D. Ohio 2007) (holding that a trustee may avoid an improperly executed mortgage). Thus, title remained in the Debtor, and the Trustee, as a BFP under Alabama law, succeeds to the Debtor's title in the Property and may avoid the Defendant's unperfected interest.[10]

**E.     Fixtures**

Having determined the issue of title, the Court must still decide what to do about the Fixtures on the Property. The Alabama Supreme Court addressed a similar situation in Godsey v. Godsey. 13 So. 2d 406 (Ala. 1943). In that case, the complainant sought specific performance under what the court found to be a contract for sale of real property. Id. at 407. No deed, mortgage or other written conveyance existed, but the complainant was in possession of the land and had made valuable improvements in reliance on his agreement with the grantor. Id. at 407-408. No money had been paid on the land, but the court, acknowledging the complainant's improvements, treated the complainant as a lessee. Id. at 408. Thus, the complainant was entitled to the value of his

---

[10]Because the Court has determined the Trustee to be a BFP under 11 U.S.C. § 544(a)(3), there is no need for the Court to address 11 U.S.C. § 544(a)(1) regarding judicial liens.

improvements less the "rental value of the land[] during the period of his possession." Id.

Applying the foregoing to the facts of this case, the Court concludes that although title to the Property remained in the Debtor, the Defendant **may** be entitled to something due to his improvements and the Fixtures placed on the Property.  Likewise, the Trustee, as the BFP of the Property is entitled to rents from the Defendant's continued use of the Property.  Thus, this Court shall conduct a trial in which the parties may put on testimony and submit evidence regarding the value of the Property, the value of the improvements and the Fixtures and the value of rents.

### III.  CONCLUSION

Based on these findings and conclusions, the Court finds that the Trustee's Motion is due to be **GRANTED**.

Accordingly, it is hereby **ORDERED**, **ADJUDGED** and **DECREED** that the Motion for Partial Summary Judgment of the Trustee, James G. Henderson is hereby **GRANTED**.

It is further **ORDERED** that this adversary proceeding is set for a status conference on April 6, 2009, at 10:30 a.m. in Courtroom 2.

Done this 13th day of March, 2009.

        **/s/ Tamara O. Mitchell**
        Tamara O. Mitchell
        United States Bankruptcy Judge

TOM/ejb

xc:    William Dennis Schilling, Attorney for the Trustee
       Steven C.R. Brown, Attorney for the Defendant